May it please the Court, NSP has Article 3 standing and the right to intervene in this case because it owns the power plant that is the sole target of the plaintiff's complaint. What plaintiffs are trying to do is to get a court order requiring EPA to take action against this specific power plant. And the sole focus of this case on one power plant and the genuine legal dispute over whether EPA has the mandatory duty to take this action is what distinguishes this case from all of the other environmental standing and intervention cases that plaintiffs cite. This complaint puts NSP's interests and uniquely its interests at issue and it therefore has the right and the ability to be heard. I'm going to start with Article 3 standing and then address intervention and I'm happy to address at any point questions the panel has. On Article 3 standing, I want to go straight to the interests at stake because if there are interests at stake, causation and redressability directly follow because the injuries would be caused by this lawsuit and could be redressed by ruling for NSP here. Injuries on Article 3 are measured by the allegations in the complaint. That's the holding of this court, it's the holding in the ACLU versus TISA case and so I want to read directly from the complaint about what this says and what it puts at stake. This is paragraph 38, it's at the addendum page 40. Plaintiffs allege this, the Department of Interior Certification triggered a mandatory duty on behalf of EPA to require Xcel Energy to install RaviBart, that's new emissions control, at Sherco to resolve its visibility impacts. This complaint puts NSP's interests, its property interests in the Sherco plant directly at issue. What about the, as I read the district court, it's saying that the only issue here is a Department of Interior's letter to the EPA and what role does your client have in that initial legal question? That's right, Your Honor. What is undisputed at this issue is whether there's a mandatory duty at all and NSP has two interests in that. The interest we allege is that the plaintiffs in their complaint aren't just asking for the court to order EPA to start DeNovo. If it were ordinarily going to exercise its discretion in this kind of a rulemaking, it would go out and determine whether there's any impairment at all, then it would determine whether there's anything that's reasonably attributable and only then it would figure out where the source is and if there's any technology that should be imposed. That's what would happen. What the first steps that would protect Sherco by requiring EPA to go straight to the place where there is already a conclusion that it is contributing visual impairment and enforce technology on there. That's what the complaint does. So you're saying that if you don't get in now and the court does allow that leap over, you've lost any opportunity to have any input in what you think should have been the proper process? That is exactly right, Your Honor. This is the proceeding that will decide what EPA is ordered to do, if it's ordered to do anything. This is the proceeding that will determine whether it skips over those steps. And that's why this is the place where NSP is going to be hurt, if at all. So what was the magistrate thinking then? Was the magistrate sort of jumping ahead to the merits and saying, well, in light of what you call the revised position of the plaintiffs, the order that's sought in the complaint is not really on the table? That's how I read the magistrate's order, Your Honor, that instead of assessing standing at the outset... You're saying that's error because you have to take the complaint as drafted. That's right. You have to do it and you have to assess it at the outset. And I've got to tell you, there's a really practical reason for that. And you can read through this briefing, and I'm very curious to hear what my opponent describes their position as today, because it has shifted so much. And one of the reasons that you assess standing and intervention at the outset on the pleadings is that that's known and it's clear and you can do it right away. Whereas if they later try to back off, that's not clear, it's not in writing, and it can't be assessed. And so that's why this Court's precedent is universal that that's the way you do it. So I do think that the magistrate judge looked to the end and said, look, if they are alleging what they're alleging and are trying to shortcut all these steps, I don't think they're legally entitled to that. And therefore, because I think NSP is going to ultimately be protected on the merits ruling, it doesn't have standing to be here in the first place, which I've got to say is somewhat ironic to be excluded from a case on the view that you're so likely to win that you can't present your winning argument, which is, I think, what happened here. Now, why do you think Judge Kyle thought he had to find, gave deference to the magistrate? Maybe this is not all that important since we're on de novo review now, but I was curious, since everybody cites him saying, well, I might have come out the other way, but I have to defer. Yeah, yeah, I think that . . . I mean, do you think that's the appropriate standard of review for a district court or is this a dispositive order that should be reviewed de novo? Well, since it's treated as a dispositive order for purposes of appeal, right? It's a final order resolving completely this for appellate jurisdiction. I think there are certainly reasons why you could have thought that it should have been treated that way there. That's not something that the party's briefed and it isn't relevant to your honors on appeal because regardless of what he had to do, you are de novo. Okay. I won't take any more of your time on that then, but I was curious. No, that's fine. I think, you know, and so the injury arises from this attempt, even at the most narrow phrasing of where they are now, even if you can get there as they're trying to skip these steps, and that is legally. The reason that EPA is not adequate to represent NSP's interest in that is sort of twofold. First of all, when you get to intervention, you're talking about representation. The standard is ordinarily very liberal and it's construed in favor of the intervener. And the reason is, is it's in the court's interest and everyone's interest to wrap up all the affected issues and deal with them at once, rather than take the risk that somebody who will be affected will be let off or left out and then have to collaterally attack after the fact, which is what would have to happen if an order affected NSP here without it being involved. This court's precedent says that sometimes that liberal standard is different when there's a government entity that can be held to be charged with representing the intervener's interests. But the precedent is clear that that presumption of adequacy arises only if the government entity is charged with representing the interests of the intervener. And that's just not the case here. The EPA is not charged with representing the industry's interest. It's called the Environmental Protection Agency. That's what it's charged with representing. Which leads into another issue I'd like you to address. What about the concerns that the with your client intervening, it somehow, it complicates the issue. It brings in more things that need to be resolved at this point. Can you address that part of it? Yeah. There are two responses to that. Number one, whether it will complicate proceedings is relevant to permissive intervention, but not to intervention as of right. And we have not appealed on permissive intervention, so it's just not at play. The second response to that is the issues that we are raising are not extrinsic to this litigation. They are directly at stake. As you identified, the core question is, does EPA have a mandatory duty to act? On that issue, we have independent legal grounds that NSP will assert why it doesn't have a duty to act. EPA's position is, they take the Department of Interior's letter as valid, as a valid certification. They grant that. And they say, nonetheless, we have discretion. What NSP says is, it disputes the validity of the letter in the first place, on two grounds, saying there was an inadequate factual finding. If you look at EPA's own regulations, that letter doesn't do what the regs require for there to be a certification. So when you say a factual finding as to whether or not this was a source. Yeah. What we're saying is that if you look at the EPA regs, in order for a Department of Interior or a federal land manager or anybody else to certify the existence of reasonably attributable visual impairment, they have to go through this whole step of monitoring. And they have to do studies and do that. And if they do that, then it's valid. If they don't, then it's not valid. And that's the part that you want to focus on. Yes. That is uniquely what NSP will be arguing. EPA expressly submitted a pleading to the court to say they weren't going to make that Our interest isn't in preserving their own discretion, which they're taking care of. Our interest is in saying that this certification is legally invalid to create any mandatory duty. And that's relevant to NSP here, specifically because of what would happen, you know, cutting off the first steps of this process that EPA would ordinarily follow. And it's also implicated in its broader interest, because if it's this easy to trigger mandatory duties without a factual foundation, this could create problems for NSP in all sorts of places. So its legal interests and its economic interests are directly implicated here. On this point of adequacy of representation, the one thing I want to point out is we've cited all sorts of cases in our brief in precisely issues like this with environmental groups or regulatory groups, where the courts, including this court as well as the other courts of appeals, have found that the government agencies are inadequate to represent either the industry on the one side or the environmental on the other. You know, Massouf was the park service, and it was snowmobilers versus environmental groups, and the court found that the government wasn't adequate to represent either because there were these competing interests that were unique. The cases that plaintiffs cite here in their brief, none of them involve an agency in an issue like this. All of them, and one of them involves students with access fees and another involves parents with smokers, where the interveners are just one group among the general population rather than somebody that has a unique separate interest at stake, which is the position here. I'm going into the time that I've reserved for rebuttal. I'm happy to answer any questions. Otherwise, I'll reserve the balance of my time. Very well. We'll let you reserve it and we'll hear from your counterpart. Mr. Ruther. Good morning, Your Honors. My name is Kevin Ruther. I'm from the Minnesota Center for Environmental Advocacy here on behalf of the conservation organizations. I want to address two main points related to NSP's argument that it is entitled to intervene under Rule 24A. The first being its argument that it's entitled to intervene because this case asks the court to impose pollution controls on Shergo. The second being its argument that it should be entitled to intervene because of its interest in whether EPA has a mandatory duty. Just by way of background before I get to those two issues, I want to just point out some of the simple facts that are relevant here. The first being that in 2009, the conservation organizations petitioned the Department of Interior to certify that the visibility impairment in Voyageurs National Park was reasonably attributable to Shergo, the power plant. NSP didn't object to that petition. It didn't put any information before the Department of Interior back in 2009. Months following that, the petition was granted by the Department of Interior, and they certified to EPA this RAVI for Shergo. Again, NSP didn't object, didn't seek reconsideration, didn't put any evidence into EPA's record or the Department of Interior's record. In 2012, in the Federal Register, EPA then stated that it intended to do a RAVI BART rulemaking for Shergo, and it said that it was planning to do that rulemaking in the next few months. Months passed, EPA didn't act, and the conservation organizations then brought this mandatory duty, unreasonable delay claim, and that's what got us here. So turning to the first issue that I want to address, does NSP have a right to intervene based on its allegation that this lawsuit could result in an order for it to place pollution controls on Shergo? They say that our complaint, as you've heard, if successful, would result in an order that implicates their protectable interest and would impede their ability to First, they say that they would lose the ability to argue about whether any impairment in Voyagers is reasonably attributable to their coal plant. Secondly, they say that it could result in a district court order requiring NSP to install SCR's selective catalytic reduction of pollution control that's admittedly expensive. We submit that NSP is mischaracterizing the conservation organization, what the conservation organizations are asking for in order to manufacture an interest here. It's simply not the case that the plaintiffs are asking the court to order NSP to install pollution controls, or it's not even the case that we're asking EPA to require NSP to install pollution controls, and the applicable regulations make that clear. If you turn to the remedy section of the complaint and you look at the prayer for relief, what you'll see is that the complaint asks the court to order EPA to make a Ravibart determination. So the question is, what is a Ravibart determination? And EPA and the plaintiffs agree that there are several steps involved in making a Ravibart determination. Those are the steps laid out, in fact, by my opposing counsel here. First, the regulation requires that EPA confirm that there is, in fact, a RAVI, a reasonable attributable, reasonably attributable visibility impairment. It requires EPA to determine the source of that RAVI. It requires EPA to, if it confirms the RAVI, to determine what BART should be for that source. Then in the complaint, why wouldn't it just say, make a final RAVI BART determination? Why does it say for sure go? Your honors, it says for sure go because if you look at the definition of what RAVI is in the federal regulations, it refers to reasonably attributable visibility impairment from a source or group of sources. And so RAVI, by definition, implies that there's a source for the visibility impairment. So we're not disputing that this case is about SHRCO. It's just that we're not at the point yet where the court below is going to order anything that is going to affect any with just general RAVI BART determination request, would that have been so unclear that the EPA wouldn't have known what to do? Was it some obligation to identify what you thought the sources were, or is that the EPA's determination? Your honor, I think that it was appropriate for us to identify the source because the source is identified in DOI's letter. It's a RAVI certification for SHRCO that the Department of Interior- So you're saying it just sort of bubbled up from what had already happened previously and it just sort of continued through what you thought the process already was going on regarding SHRCO? In other words, you said that there was something in the federal register saying this is going to start, so you're sort of assuming that that's what everybody understands it to be? No, let me back up. So back in 2009, we requested that the Department of Interior certify this RAVI as it relates to SHRCO. So SHRCO was identified well before- By your organization? Oh, well, by the National Park Service, by the Forest Service, by EPA, and by us. So there's plenty of evidence in the record relating to modeling from the development of the Regional Haze SIP, the State Implementation Plan, that shows that SHRCO is a very large source pollution and that, in fact, it is having an effect on visibility in the national parks. What's the purpose of paragraph 38 of the complaint? Well, Your Honor, I think that paragraph 38 says what we ultimately believe the outcome of a regulatory proceeding ought to be. Well, that's not what it says. It says the certification already triggered a mandatory duty on behalf of EPA to require Xcel Energy to install RAVI BART at SHRCO. Isn't that stronger than your claim about just making a determination in general? I think, Your Honor, you're correct. The complaint could have been more skillfully drafted in that area, given where we are today. But the relevant point I would point you to is what we asked for in the prayer for relief, what we're really asking for from the court. Well, I understand that. But doesn't that have to be read in light of what comes before? You're saying that you don't think on this complaint the District Court could order Xcel Energy to install RAVI BART at SHRCO? No, Your Honor, because we don't know what RAVI BART is. And that requires EPA to have a rulemaking. And if I could just go back to the complaint has to be interpreted in light of the regulations that it cites to. And so if we look specifically at the regulation cited, this triggering regulation, and it's 40 CFR 51.302 C4 Romanet 1. You're sort of arguing, well, what we pleaded, we're not entitled to what we pleaded. You're arguing the merits are like the magistrate did. Well, they couldn't possibly get what they asked for. So we shouldn't let Xcel intervene. No, Your Honor. I think what I'm arguing is that you have to interpret what we pled in light of regulations and what the regulations say. Because the pleading specifically requests a RAVI BART determination. It doesn't request a BART determination. It says a RAVI BART determination. And when you look at the regulation that we are saying triggered the mandatory duty, it makes very clear that EPA needs to determine BART, and I'm quoting here, where the impairment in the class one area is reasonably attributable to that existing stationary source. In other words, EPA has to go back and confirm that that stationary source is the source of the RAVI. This issue also of whether or not there was good evidence that the DOI was relying on, EPA has to go back and look at that evidence based on the plain meaning of the regulations here. If you look in the definition section of the cited regulations, reasonably attributable means attributable by visual observation or any other technique that the state, or in this case EPA, deems appropriate. So reasonably attributable by definition requires EPA's involvement. Far from us trying to skip over steps here, what NSP is really trying to do is skip over steps. All of this under the Clean Air Act, the Clean Air Act is written in such a way that these determinations need to be made by the EPA. And that determination is based on complicated air models, and NSP is asking to intervene in this lawsuit to have the court basically hold a trial on these technical issues. That's not what the Clean Air Act had contemplated here. I just want to move quickly to the second issue, which is whether NSP is entitled to intervene as of right on the narrow legal question of whether the DOI certification triggered a mandatory duty. And this argument fails for two reasons. One is that it doesn't have the requisite interest. The other is that it hasn't demonstrated that EPA is unable to adequately represent that interest. So first I'll remind you that EPA said in June 2012 that it was going to quote further rulemaking regarding Ravi Bhart for SHRCO within the next few months. So what we're talking about here in terms of an interest is really the difference between a court ordering EPA to conduct its planned rulemaking by a date certain and EPA having discretion to do the rulemaking on its own schedule. Industry's interest in that narrow legal question of whether a rulemaking is mandatory is not a would entitle it to intervention under Rule 24. If it were, every industry possibly regulated by a rulemaking would be entitled to intervene in every mandatory duty action and that's plainly not the case. NSP hasn't cited to any case where simply being subjected to have to participate in a rulemaking was found to be a legally protectable interest. And especially here where EPA has already said it intended to do the rulemaking, it's hard to see that there's an interest at all. The cases that NSP is relying on, and you'll recall the Conservation Law Foundation case had to do with the fishing groups. There's a Sierra Club case from the Ninth Circuit where the city of Phoenix was allowed to intervene. Those cases involved requests from the court for orders that would have directly affected those intervening parties. Here we're requesting an order for EPA to enter a rulemaking. It's not at this point going to directly affect the Sherco power plant or NSP's interest in the Sherco power plant. This case is a lot like the Manasota case from the Ninth Circuit. Here we're requesting an action trying to get EPA to list waters as impaired, as polluted, because Florida had not done a good job on its impaired waters list. And the industry groups that were discharging into the polluted waters tried to intervene. They argued, just like NSP is arguing here, if the plaintiffs are successful, we're going to have to install more their intervention. And the reason is because the request in that case was to force EPA to identify those impaired waters. The court said, we don't know yet which waters are going to be on the list because EPA hasn't acted. The point to this lawsuit is to get EPA to act and identify the waters. And so therefore you don't yet have a protectable interest. And the same is true here. The point of this lawsuit is to force EPA to do the rulemaking that it said it was going to do back in 2012. We don't know what the result of that rulemaking is going to be. We don't know if they're going to confirm DOI's allegation that there is a reasonably attributable visitability impairment due to SHRCO's pollution. If they do, we don't know what BART is going to be. We don't know what the best available retrofit technology is that EPA would select for SHRCO. They may determine that it doesn't need BART. Very well. Thank you for your argument, Mr. Ruther. And we'll hear from Mr. Van Ort in rebuttal. Thank you, Your Honor. At the outset of this case, everybody thought this complaint was asking for a court order requiring EPA to impose BART on SHRCO. We read it that way. The EPA read it that way. We cited in our brief docket 27 below at page 2, EPA submitted a response to their opposition specifically because EPA read them as trying to get a mandatory order on EPA. The EPA wanted to make it clear that no, we don't agree with that. So we read it that way. EPA read it that way. The district court magistrate judge read their complaint that way. That's addendum page 22 at note 9 where the magistrate specifically said, look, what I'm hearing from plaintiffs today is different from what they alleged in the complaint. So for purposes of standing and intervention, which are assessed as of the complaint, we think it's clear that the complaint puts our interest at issue. What I'm hearing now and today is plaintiffs taking a step further back from anything they've ever said, even in their briefs up to this point. For the very first time today, they're now saying they think EPA has the freedom to decide that there is no visibility impairment. They've never said that in any brief, which is, again, why you do this on pleadings, not based on shifting things. If they want to argue mootness based on their own change of action, that's a separate set of standards that is really hard to meet, and they've got to make it legally binding. If they want to do that on remand, then we can do that. But the only issue... Well, they could amend. Couldn't they amend their complaint? They could. And if they want to amend their complaint on remand, and to make this formally binding on there, and then argue that because of that change of position, we no longer have an interest because it's moot, they can do that. That's not the posture then. They've never amended. They've never argued mootness. This is standing. That's the only thing that's at issue on this appeal. And what I really want to drive home is that NSP's interest here is the exact mirror image of plaintiff's complaint and their injury and redressability, right? Their claim to injury is that their members are suffering from impaired visibility in Voyageurs and Isle Royale, and that it's caused by SHRCO, and that can be redressed by getting an order directing SHRCO to install new emission controls that will fix the visibility. To the very same extent that they have injury causation and redressability, we do, and NSP does on the other side. It is equally direct. You don't think they would have standing to seek what they now? You know, we aren't taking any position on whether they have standing, Your Honor. Our view, though, is a very simple view. No, I meant if they amend and don't seek the same kind of redressability that you're describing. You know, the court has a de novo duty to sui sponte, consider its own jurisdiction. And our point is not to attack their standing. Our point is simply to say this. If they are, if the federal courts have power to hear their suit attacking this specific power plant, then the federal courts also have power to allow the owner of the power plant to be heard. When what they're asking is really extraordinary to hold that the U.S. courts actually lack constitutional authority to allow NSP to be heard here. That would be an extraordinary thing. It's never been held in a case like this, and it shouldn't be. The last thing on this is my opponent addressed a couple of time EPA statement that it may exercise its discretion to do this. The reason they're fighting to do a Ravi-Bart determination. If EPA exercised discretion, it would be a de novo. But the reason we're all here is that discretion can be changed. And EPA previously did the full review and found no Ravi and Voyagers. And they're trying to make it skip that and get to the emission controls precisely so that doesn't happen again. All right. Thank you for your argument. Appreciate both counsel and the case is submitted. We will file an opinion in due course.